UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA INFANTE DE PEREZ, | Case No. 1:17-cv-00404-JDP |
| Plaintiff, | |
| v. | ORDER ON SOCIAL SECURITY APPEAL |
| COMMISSIONER OF SOCIAL SECURITY, | (Doc. No. 1) |
| Defendant. | |

**I.   INTRODUCTION**

Plaintiff Elena Infante De Perez has filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. No. 1.) The case has been submitted on the parties' briefs. The court will reverse and remand for further proceedings.

1

## II. THE DISABILITY EVALUATION STANDARD

A person has a "disability" under the Social Security Act of 1935 if the claimant cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The physical or mental impairment must be an anatomical, physiological, or psychological abnormality "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. §§ 423(d)(3), 1382c(a)(3)(D). The impairment must be sufficiently severe that the claimant cannot perform her previous work and cannot—considering her age, education, and work experience—engage in substantial gainful work that exists in the national economy. *See id*. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must consider the combined effect of all the claimant's impairments, regardless of whether any individual impairment is on its own severe enough to constitute a disability. *See id*. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Social Security Administration has a sequential, five-step process for evaluating a claimed disability. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(f). If a claimant is determined to be either disabled or not disabled at any step in the sequence, the analysis ceases without a consideration of subsequent steps. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *Id*. §§ 404.1520(b), 416.920(b). At step two, the Commissioner considers whether the claimant has a severe impairment or combination of impairments that significantly limit his ability to perform basic work activities. *See id*. §§ 404.1520(c), 416.920(c). At step three, the Commissioner determines whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"). *See id*. §§ 404.1520(d), 416.920(d). At step four, the Commissioner determines whether the claimant can perform his or her past jobs. *See id*. §§ 404.1520(f), 416.920(f). At step five, the Commissioner determines whether the claimant can perform other work that exists in significant numbers in the national economy. *See id*. §§ 404.1520(g), 416.920(g). The claimant bears the

burden of proof at steps one through four, but the Commissioner bears the burden at step five. *See id*.

**III. PROCEDURAL BACKGROUND**

De Perez has filed an application for SSI claiming disability beginning September 30, 2013. AR 28. The decision of the Administrative Law Judge ("ALJ") to deny benefits on November 4, 2015, became the final decision of the Commissioner when the Commissioner's Appeals Council denied De Perez's request to review the appeal. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981; 416.1481. The ALJ's decision is now before this court for review.

**IV. THE COMMISSIONER'S FINAL DECISION**

The ALJ found that De Perez is not disabled. AR 28-38. At step one, the ALJ found that De Perez had not engaged in substantial gainful activity since the alleged onset date of her disability, September 30, 2013.[1] AR 30. The ALJ then found severe impairments at step two: the lingering effects of a cerebrovascular accident (stroke), diabetes mellitus with neuropathy, and obesity. AR 31-32. At step three, the ALJ found that De Perez did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 32. The ALJ also determined at step three that De Perez had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she must be allowed to use a cane for long ambulation (500 feet or more); cannot climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, crouch, kneel, and crawl; and must avoid concentrated exposure to hazardous machinery and unprotected heights.

AR 33. The ALJ therefore proceeded to step four.

Relying on a Vocational Expert's ("VE") testimony at step four, the ALJ found that De Perez had past relevant work in "Assembly\Production," "Farm Worker-Fruit," and "Farm Worker-Vegetables II." AR 36. The ALJ determined that De Perez could no longer perform her past relevant work because she could no longer meet the exertional demands of that work. *See*

---

[1] All "AR" citations refer to the administrative record. (Doc. No. 10.)

3

AR 36. The ALJ then found that De Perez has a "marginal education, is illiterate, and ha[s] a minimal ability to communicate in English only." AR 36. Regarding De Perez's ability to communicate, the ALJ stated:

> The claimant's primary language is Spanish and she testified she knows little English. In her disability application, however, she indicated she could read and understand English and write more than her name in English . . . . Moreover, while the claimant claims she does not read or use a computer, she admitted she can read street signs, has a driver's license, and can drive. The undersigned also notes the claimant has lived and worked in the United States for more than 20 years and has raised several children in the United States, circumstances which suggest she is likely able to communicate in at least basic English. Furthermore, she is clearly very fluent in Spanish as evidenced by her detailed, passionate, and lengthy responses to questions during the hearing.

AR 36.

At step five—after considering De Perez's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpart P, App. 2—the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR 37. The ALJ thus concluded that De Perez was not disabled as defined in the Social Security Act. AR 38.

In reaching this step-five conclusion, the ALJ stated that he relied on the VE's testimony that a claimant with De Perez's RFC and vocational profile could perform the requirements of three representative occupations from the Dictionary of Occupational Titles ("DOT"):

1. Sorter/Clerical (DOT#: 209.687-022; unskilled (SVP 2); sedentary; 5,000 positions nationally; 700 positions regionally (California));

2. Order Clerk (DOT#: 209.567-014; unskilled (SVP 2); sedentary; 5,500 positions nationally; 500 positions regionally (California)); and

3. Election Clerk (DOT#: 205.367-030; unskilled (SVP 2); sedentary; 88,000 positions nationally; 9,000 positions regionally (California)).

AR 37. The ALJ cited the VE's further testimony that De Perez's need for a cane to walk more than 500 feet imposed an additional limit, reducing the available jobs in these three representative occupations by 75 percent:

1. Sorter/Clerical; 1,250 positions nationally and 175 positions regionally;

2. Order Clerk; 1,375 positions nationally and 125 positions regionally; and

    3. Election Clerk; 22,000 positions nationally and 2,250 positions regionally.

*Id.*

## V.     ARGUMENTS ON APPEAL

De Perez's arguments on appeal focus on the ALJ's conclusions at step five of the disability evaluation process. (Doc. No. 13, at 5.) First, she argues that the ALJ failed to resolve inconsistencies between the VE's testimony and the DOT when the ALJ failed to address De Perez's English-language limitations with the VE. Second, she argues that the ALJ failed to resolve inconsistencies between the VE's testimony and the DOT when the VE testified that temporary, rather than fulltime, work was available in significant numbers in the national economy. Third, as to the first two jobs identified by the VE—sorter/clerical and order clerk—De Perez asserts that the ALJ erred in finding that jobs that she can perform exist in significant numbers in the national economy.

In response, the Commissioner contends that De Perez waived the arguments that she presents in this appeal when she failed to raise those arguments before the ALJ. The Commissioner further argues that the ALJ properly concluded at step five that De Perez can perform the three positions identified by the VE in the administrative hearing—sorter/clerical, order clerk, and election clerk. The Commissioner also argues that work that could be performed by De Perez exists in significant numbers in the national economy.

## VI.     STANDARD OF REVIEW

A district court will set aside the Commissioner's final decision denying benefits only if that decision is either (1) not supported by substantial evidence or (2) based on a legal error. *See* 42 U.S.C. § 405(g); *Wellington v. Berryhill*, 878 F.3d 867, 871 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance; [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). In evaluating whether a decision of the Commissioner was based on substantial evidence, the court reviews the "entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion,

and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citations omitted). If the evidence can reasonably support either affirming or reversing the Commissioner's final decision, the court may not substitute its judgment for that of the Commissioner—and thus affirms under the substantial evidence standard. *Id.*; *see Revels*, 874 F.3d at 654 ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). However, in evaluating whether a decision is supported by substantial evidence, the court reviews only the reasons provided by the Commissioner in the disability determination and may not affirm based on a ground upon which the Commissioner did not rely. *See Revels*, 874 F.3d at 654. The court will find legal error if it concludes that the Commissioner applied the wrong legal standard. *See Wellington v. Colvin*, 2016 WL 224184, at *5 (E.D. Cal. Jan. 19, 2016), *aff'd sub nom. Wellington v. Berryhill*, 878 F.3d 867 (9th Cir. 2017).

### VII. DISCUSSION

#### A. Waiver

The court will first consider the Commissioner's argument that De Perez failed to preserve any of the arguments she makes in this appeal because she neglected to raise those three arguments below. (Doc. No. 14, at 8-9.) The Court of Appeals for the Ninth Circuit recently considered the issue of waiver in *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017). The claimant in *Shaibi* argued for the first time in the district court that the ALJ should have taken judicial notice that the VE's job estimates were inconsistent with other sources of available evidence. *See id.* at 1108. The Court of Appeals for the Ninth Circuit held that a claimant represented by counsel must challenge the accuracy of VE's estimate of available jobs during the administrative proceeding to preserve such a challenge on appeal. *See id.* at 1109; *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (same). However, the Court of Appeals reiterated that the ALJ is affirmatively required "to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency"— and an ALJ's failure to do so may require reversal. *Shaibi*, 883 F.3d at 1109 (citing SSR 00-4P).

6

At least with respect to her first two arguments, De Perez argues that there was an apparent conflict between the VE's testimony and the DOT that the ALJ had a duty to resolve. Given that De Perez is alleging apparent conflicts, her first two arguments are not barred.[2] *See Shaibi*, 883 F.3d at 1109; *Yang v. Berryhill*, No. 1:16-CV-1195, 2017 WL 5878203, at *3 (E.D. Cal. Nov. 29, 2017) (relying on *Shaibi* and concluding that a social security claimant need not raise a conflict between the VE's testimony and the DOT regarding functional requirements of job duties at the administrative level).

### *B. The ALJ's step-five determination*

Each of plaintiff's arguments concerns the ALJ's step-five determination that De Perez was not disabled because there were jobs existing in significant numbers in the national economy that she could perform. At step five, the Commissioner is required "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his or her] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). To do this, the Commissioner (1) assesses the claimant's RFC, which is defined as the most that a claimant can do despite "physical and mental limitations" caused by her impairments and symptoms; and (2) considers potential occupations that the claimant may be able to perform given the claimant's RFC. *See* 20 C.F.R. §§ 416.945(a)(1), 416.966. The Commissioner may rely on the DOT and testimony from a VE to assess a claimant's ability to perform certain jobs. *See* 20 C.F.R. §§ 416.966(e); 416.969; 416.966(d)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

Occupational testimony by a VE should be consistent with the DOT. *See* SSR 00-04, 2000 WL 1898704, at *2 (Dec. 4, 2000). When there is an apparent conflict between the VE's testimony and the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps.'" *Id*. In such a situation, the Commissioner has an affirmative duty resolve the conflict—for example, by eliciting a reasonable explanation from the VE—before relying on the affected portion of VE's testimony in support of a disability determination. *Id.*; *see Zavalin v. Colvin*, 778 F. 3d 842, 846

---

[2] De Perez's third argument poses a more difficult problem with respect to waiver because it is contingent on the court accepting the merits of the second argument. The court will briefly address plaintiff's third argument below.

7

(9th Cir. 2015); *Massachi v. Astrue*, 486 F. 3d 1149, 1153-1154 (9th Cir. 2007).

Not all potential conflicts between a VE's job suitability recommendation and the DOT will be apparent or obvious. *See Gutierrez v. Colvin*, 844 F. 3d 804, 808 (9th Cir. 2016). To be apparent or obvious, the VE's testimony must be at odds with the DOT's listing of job requirements that are essential, integral, or expected. *See id.* "[T]asks that are not essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts … [l]ikewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id.*

*1. Requirement of English-language ability*

De Perez first argues that there was an apparent conflict between the VE's testimony and the DOT in that the VE failed to consider De Perez's English-language limitations when identifying jobs that she could perform. In making a disability determination with respect to Social Security benefits, the Commissioner is required specifically to "take into account any physical, mental, educational, or linguistic limitation of such individual (including any lack of facility with the English language) . . . ." 42 U.S.C. § 1383(c)(1)(A). The applicable regulations describe how the Commissioner is to evaluate educational level and inability to communicate in English when assessing a claimant's ability to "meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability." 20 C.F.R. §§ 404.1564, 416.964. The regulations identify four educational levels:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
>
> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired

> through formal schooling at a 12th grade level or above. We generally
> consider that someone with these educational abilities can do semi-skilled
> through skilled work.

*Id*. §§ 404.1564(b), 416.964(b). The regulations also describe how a person's inability to communicate in English is considered in the process of evaluating educational level:

> (5) Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

*Id*.

De Perez testified at the hearing—with the assistance of a Spanish interpreter—that all her education took place in Mexico and that she "got as far as the sixth grade." AR 55. She testified that she could read and write in Spanish, but not in English. AR 56 (testifying that she could read street signs and the names on some stores). She stated that she could do basic addition and subtraction (two plus two), but not multiplication. AR 57. In her prior jobs, De Perez testified that her supervisors instructed her in "Spanish only." AR 57. Accordingly, in the written decision dated November 4, 2015, the ALJ concluded that De Perez has a "marginal education, *is illiterate*, and has a minimal ability to communicate in English only." AR 36 (emphasis added).

However, the ALJ relied on the VE's testimony that a hypothetical person with De Perez's vocational profile would be able to perform the requirements of occupations such as (1) Sorter/Clerical (DOT#: 209.687-022; unskilled (SVP 2); sedentary); (2) Order Clerk (DOT#: 209.567-014; unskilled (SVP 2); sedentary); and (3) Election Clerk (DOT: 205.367-030; unskilled (SVP 2); sedentary). *See* AR 37, 82. The parties agree that all three of these jobs, as defined by the DOT, require a language level of 2. (Doc. Nos. 13, at 6; 14, at 5.) A language level 2, in turn, requires the following:

> Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

> Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> Speaking: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

DOT, App. C, *Components of the Definition Trailer*, 1991 WL 688702 (1991.) An illiterate person—such as the ALJ determined De Perez to be—does not possess this ability. Confronted with this apparent conflict between the occupational requirements laid out in the DOT and the VE's testimony, the ALJ should have asked the VE for a reasonable explanation for his testimony before relying on that testimony to support a finding that De Perez is not disabled. *See Massachi*, 486 F. 3d at 1153-1154; *Turner v. Berryhill*, No. 1:17-CV-00022-GSA, 2018 WL 1413050, at *5 (E.D. Cal. Mar. 21, 2018) (remanding for further development of the record to assess the effect of a claimant's illiteracy on her ability to perform identified jobs). Without such an explanation, the ALJ should not have relied on this portion of the VE's testimony.

The Commissioner's arguments are unpersuasive. The Commissioner first argues that De Perez must have at least level-2 language ability, since she previously performed jobs requiring such a language level. (Doc. No. 14, at 5-6.) However, the ALJ found De Perez to be illiterate, and the court declines to re-interpret the record as supporting a determination that De Perez has a level-2 language ability. Second, the Commissioner argues that the ALJ need not consider the DOT's language levels, and that the Commissioner's regulations do not require it to consider English proficiency. (Doc. No. 14, at 6-8.) The law, however, is to the contrary. *See* 42 U.S.C. § 1383(c)(1)(A) (requiring the Commissioner to "specifically take into account any . . . . linguistic limitation of [the claimant] (including any lack of facility with the English language) in determining, with respect to the eligibility of such individual for benefits . . . ."); 20 C.F.R. §§ 404.1564(b), 416.964(b) (providing that the Commissioner will consider a claimant's inability to communicate in English when evaluating the claimant's educational background as a vocational factor "[b]ecause English is the dominant language of the country, [and] it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language [or level of fluency in another language].").

2. *Short-term nature of election clerk occupation*

De Perez next argues that there was an apparent conflict between the VE's testimony and the DOT in that the VE identified a short-term position (Elections Clerk) for her, but the Commissioner is required to evaluate a claimant's ability to perform "work activity on a *regular and continuing basis*." 20 C.F.R. § 404.1545(b); SSR 96-8p (emphasis added). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*.

The position of "election clerk" is described as follows:

> Performs any combination of the following duties *during elections*: Compiles and verifies voter lists from official registration records. Requests identification of voters at polling place. Obtains signatures and records names of voters to prevent voting of unauthorized persons. Distributes ballots to voters and answers questions concerning voting procedure. Counts valid ballots and prepares official reports of election results.

205.367-030 ELECTION CLERK, DICOT 205.367-030 (emphasis added). De Perez points out that the duties of an Election Clerk are performed "during elections." *Id*. She contends that work that occurs "during elections" differs from work occurring on "a regular and continuing basis," and so an apparent conflict existed between the VE's testimony and the DOT that the ALJ had a duty to resolve. The Commissioner responds that De Perez's contention is speculative and that the ALJ properly relied upon the testimony of the VE.

The court agrees that the DOT's description of an election clerk, which references work occurring "during elections," appears to portray a position that is not "regular and continuing." An apparent conflict thus existed between the VE's testimony and the DOT, and the ALJ had a duty to request a reasonable explanation from the VE for this conflict before relying on the VE's testimony to support his conclusion that De Perez is not disabled. *See Massachi*, 486 F. 3d at 1152-1154 (holding that an ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT).

*3. Job numbers*

The court need not reach the merits of De Perez's third argument—that, when the occupation of Election Clerk is removed from the list of occupations she can perform because it is

11

not a fulltime occupation, jobs do not exist in "significant numbers" to warrant a finding at step five that she is not disabled. The court will remand this case for further proceedings so that the ALJ can further develop the record and elicit a reasonable explanation from the VE for conflicts between the VE's testimony and the DOT. In future proceedings, De Perez is not precluded from inquiring about the factual basis for the VE's testimony.

### *C. Remand*

Given that apparent conflicts existed between the VE's testimony and the DOT, and that the ALJ did not resolve these conflicts, the court finds that the ALJ's decision was not supported by substantial evidence. Accordingly, the court will remand the case so that the record can be further developed.

## VIII. CONCLUSION AND ORDER

Plaintiff Elena Infante De Perez's appeal from the administrative decision of the Commissioner of Social Security is granted. This case is remanded for further proceedings consistent with this order. The Clerk of Court is directed (1) to enter judgment in favor of plaintiff Elena Infante De Perez and against defendant Commissioner of Social Security, and (2) to close this case.

IT IS SO ORDERED.

Dated: July 17, 2018

UNITED STATES MAGISTRATE JUDGE